IN THE MATTER OF E.J.

No. COA12-673

Filed 5 February 2013

**1. Parties—proper party—juvenile neglect and dependency— parent**

Although respondent mother was not served with the juvenile petition in a neglect and dependency case, she was a proper party to appeal the adjudication and disposition order under N.C.G.S. § 7B-1002.

**2. Child Abuse, Dependency, and Neglect—adjudication and disposition order—lack of subject matter jurisdiction**

The trial court lacked subject matter jurisdiction in a juvenile neglect and dependency case to enter the 4 April 2012 adjudication and disposition order. The order lacked specific findings of fact and conclusions of law that the North Carolina court met the requirements of N.C.G.S. §§ 50A-201(a)(1) or 50A-201(a)(2) such that it could make a modification under N.C.G.S. § 50A-203. While the trial court had temporary jurisdiction to enter the continued non-secure child custody orders, the trial court did not have jurisdiction, exclusive or temporary, to enter the juvenile adjudication and disposition order.

Appeal by respondent–mother from order entered 4 April 2012 by Judge Betty J. Brown in Guilford County District Court. Heard in the Court of Appeals 3 January 2013.

IN RE E.J.

[225 N.C. App. 333 (2013)]

*Mercedes O. Chut, for petitioner–appellee, Guilford County Department of Social Services.*

*Margaret F. Rowlett, for Guardian ad Litem.*

*Leslie Rawls, for respondent–appellant, mother.*

MARTIN, Chief Judge.

Mother appeals from an order that adjudicated her son neglected and dependent, and placed him in the temporary legal custody of the Guilford County Department of Social Services ("DSS"). For the following reasons, we vacate and remand.

On or about 23 January 2012, fourteen-year-old E.J. and his father were returning to Tennessee after a weekend trip to Fayetteville, North Carolina, when they stopped at a gas station in Greensboro. Following an argument with his father, E.J. called police and informed them that his father was trying to fight him and that they had been living out of a car. Greensboro Police officers brought E.J. to DSS.

The next day, DSS filed a juvenile petition alleging E.J. was a neglected and dependent juvenile. In the petition, DSS alleged that the father and E.J. had traveled to Fayetteville, North Carolina, in the hopes of finding an apartment; that the father was diagnosed with bipolar disorder; and that E.J.'s relatives in the area were unwilling to take E.J. into their homes. DSS further alleged that mother, who lived in New Hampshire, informed DSS that she was unable to care for E.J.; that she admitted to DSS that several of her children had been removed from her care and placed in the custody of social services in New York; and that she acknowledged paying $100.00 per month in child support towards E.J.'s care. A summons was personally served on the father, but the summons mailed to mother was not returned and the record does not indicate that she was served through any other means. The trial court entered an initial order for non-secure custody based upon E.J. being abandoned.

The trial court held a hearing on 25 January 2012 and entered an order for continued non-secure custody on 1 February 2012. The court found that there was prior child protective services history in Clinton County, New York, and that DSS was to provide the name and phone number of "the Judge in Clinton County, NY" so the court could speak with the New York judge. The trial court entered another

order for continued non-secure custody on 10 February 2012. The trial court found that:

> This court spoke w/ Judge Timothy Lawless, presiding judge in Clinton County, New York. Judge Lawless has not determined if Clinton County should retain custody [sic], but will make determination and notify this court prior to next hearing. Appropriate for this Ct. to exercise emergency jurisdiction for the purpose of continuing custody with GCDSS.

The trial court ordered E.J. to remain in the non-secure custody of DSS and set the adjudication hearing for March 2012.

The trial court conducted an adjudication and disposition hearing on 9 March 2012. At the start of the hearing, the trial court was advised that mother had not been served with the juvenile petition and she was not present for the hearing. The parties also advised the court that mother, through her attorney, had filed a motion in limine seeking to exclude oral statements mother made to DSS personnel. The trial court did not rule on the motion in limine as mother had not been served with the petition and dismissed mother's provisional counsel based upon mother's failure to appear. By order filed 4 April 2012, the trial court adjudicated E.J. to be a dependent and neglected juvenile. The trial court concluded that "[t]his matter is properly before the Court and the Court has jurisdiction over the parties and subject matter of this action" and ordered "[t]his matter is retained for further orders of the court." Mother appeals.

[1] We first address DSS and the Guardian ad Litem's ("GAL") assertion that mother lacks standing to bring this appeal. Although mother was not served with the juvenile petition, she is a proper party to appeal the adjudication and disposition order. N.C.G.S. §§ 7B-1001 and 7B-1002 designate when a right to appeal exists in a juvenile matter and which persons possess the right to appeal. N.C. Gen. Stat. §§ 7B-1001 & 7B-1002 (2011). N.C.G.S. § 7B-1001 provides that "[a]ny initial order of disposition and the adjudication order upon which it is based" may be appealed directly to this Court. N.C. Gen. Stat. § 7B-1001(a)(3). Under N.C.G.S. § 7B-1002, which is entitled "Proper parties for appeal[,]" an appeal may be taken by "[a] parent[.]" N.C. Gen. Stat. § 7B-1002(4). Accordingly, as mother is E.J.'s parent, she may pursue the present appeal from the adjudication and disposition order. We now turn to the merits of mother's arguments.

**[2]** Mother contends the trial court lacked subject matter jurisdiction to enter the 4 April 2012 adjudication and disposition order. We agree.

Whether the trial court had subject matter jurisdiction is a question of law, and is reviewed *de novo* on appeal. *Powers v. Wagner*, ___ N.C. App. ___, ___, 716 S.E.2d 354, 357 (2011). Subject matter jurisdiction is the threshold requirement for a court to hear and adjudicate a controversy brought before it. *In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003). The North Carolina Juvenile Code grants our district courts "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a) (2011). However, the jurisdictional requirements of the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA") and the Parental Kidnapping Prevention Act ("PKPA") must also be satisfied for a court to have authority to adjudicate petitions filed pursuant to our juvenile code. *In re Brode*, 151 N.C. App. 690, 692-94, 566 S.E.2d 858, 860-61 (2002).

Jurisdiction under the UCCJEA may be either "exclusive, continuing" or "temporary emergency." *See* N.C. Gen. Stat. §§ 50A-201–204 (2011). "The first provision of the UCCJEA, [N.C.G.S. § 50A–201], addresses the jurisdictional requirements for initial child-custody determinations." *In re J.W.S.*, 194 N.C. App. 439, 446, 669 S.E.2d 850, 854 (2008). According to N.C.G.S. § 50A-102(8), an "initial determination" is "the first child-custody determination concerning a particular child." N.C. Gen. Stat. § 50A–102(8) (2011). A court that properly makes an initial determination will have "exclusive, continuing jurisdiction" until the happening of certain enumerated events which cause the court to lose that jurisdiction. *See* N.C. Gen. Stat. § 50A-202. These events include, *inter alia*, when a court "determines that the child, the child's parents, and any person acting as a parent do not presently reside in [the state that made the initial determination]." *Id.* Either the state that made the initial child-custody determination or another state may make the determination that none of the enumerated parties continue to reside in that state. N.C. Gen. Stat. § 50A-203(2); Official Comment to N.C. Gen. Stat. § 50A-203; Official Comment to N.C. Gen. Stat. § 50A-202 ("If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction.").

**IN RE E.J.**

[225 N.C. App. 333 (2013)]

A North Carolina court may not modify another court's child-custody determination unless:

> a court of this State has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2) *and*:
>
> > (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A-202 or that a court of this State would be a more convenient forum under G.S. 50A-207; *or*
> >
> > (2) A court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

N.C. Gen. Stat. § 50A-203 (emphasis added). The requirements for an "initial determination" under N.C.G.S. § 50A-201(a)(1) and 50A-201(a)(2) state:

> [A] court of this State has jurisdiction to make an initial child-custody determination only if:
>
> > (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
> >
> > (2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:
> >
> > > a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

>     b. Substantial evidence is available in this State
>     concerning the child's care, protection, training,
>     and personal relationships;

N.C. Gen. Stat. § 50A-201(a).

A court that cannot meet the requirements for exclusive, continued jurisdiction may, nevertheless, exercise "temporary emergency" jurisdiction under the UCCJEA. *See* N.C. Gen. Stat. § 50A-204. Under N.C.G.S. § 50A-204(a), temporary emergency jurisdiction may be invoked by a court if a "child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." N.C. Gen. Stat. § 50A-204(a). The statute further provides:

>     (c) If there is a previous child-custody determination
>     that is entitled to be enforced under this Article, . . . any
>     order issued by a court of this State under this section
>     must specify in the order a period that the court considers adequate to allow the person seeking an order to
>     obtain an order from the state having jurisdiction . . . .
>     The order issued in this State remains in effect until an
>     order is obtained from the other state within the period
>     specified or the period expires.

N.C. Gen. Stat. § 50A-204(c). "When the court invokes emergency jurisdiction, any orders entered shall be temporary protective orders only." *In re Brode*, 151 N.C. App. at 693, 566 S.E.2d at 860 (citing *In re Malone*, 129 N.C. App 338, 343, 498 S.E.2d 836, 839 (1998)).

To exercise either emergency or exclusive jurisdiction, the trial court must make specific findings of fact to support such an action. *Williams v. Williams*, 110 N.C. App. 406, 411, 430 S.E.2d 277, 281 (1993) ("In exercising jurisdiction over child custody matters, North Carolina requires the trial court to make specific findings of fact supporting its actions.").

In this case, it appears the trial court first learned of the possibility of a valid New York child-custody order at the 25 January 2012 hearing. After making contact with Judge Lawless of Clinton County, New York, the trial court properly entered its February 2012 order that continued non-secure custody and concluded it had emergency jurisdiction as the New York court had not determined at that time

whether New York would retain jurisdiction. Then, in its adjudication and disposition order, the trial court summarily concluded it had "jurisdiction over the . . . subject matter of this action." However, there is no finding of fact, order, or any other indication in the record showing that the New York court had opted not to exercise its jurisdiction in this matter. And while it appears from the record that neither of the parents nor E.J. continue to live in New York, there is no specific finding of fact or conclusion of law concerning the status of the New York court's exclusive, continuing jurisdiction. Even if the trial court had supported a conclusion that New York no longer had exclusive, continuing jurisdiction because none of the parties continued to reside in New York with adequate findings of fact, the order still lacked specific findings of fact and conclusions of law that the North Carolina court met the requirements of N.C.G.S. § 50A-201(a)(1) or 50A-201(a)(2) such that it could make a modification under N.C.G.S. § 50A-203. Without these specific findings, the order was insufficient to invoke exclusive jurisdiction in North Carolina. *See Williams*, 110 N.C. App. at 411, 430 S.E.2d at 281.

The adjudication and disposition order is also insufficient to invoke temporary emergency jurisdiction under N.C.G.S. § 50A-204. The trial court could only enter an order under its temporary emergency jurisdiction for a specific period of time. *See* N.C. Gen. Stat. § 15A-204(c); *In re Brode*, 151 N.C. App. at 693, 566 S.E.2d at 860. The trial court's order of 4 April 2012 does not state a period at the end of which the order will expire. Indeed, the trial court's order states that the matter was "retained for further orders of the court" and establishes a permanent plan for E.J. Therefore, the order, by its terms, is insufficient to establish the court's temporary emergency jurisdiction over this action.

Accordingly, while the trial court had temporary jurisdiction to enter the continued non-secure custody orders, the trial court did not have jurisdiction, exclusive or temporary, to enter the juvenile adjudication order. Thus, we vacate the trial court's order entered 4 April 2012.

Vacated and remanded for proceedings consistent with this opinion and the dictates of the UCCJEA and PKPA.

Judges STROUD and ERVIN concur.